**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANGELICA DAMICO, individually and on behalf of all those similarly situated,<br><br>                Plaintiffs,<br><br>      v.<br><br>LULIFAMA.COM, LLC, MY LULIBABE, LLC., EARTH, SEA & WEAR, LLC D/B/A LULIFAMA, ORLANDO BATHING SUIT, LLC. D/B/A EVERYTHING BUT WATER, CINDY PRADO, MICHELE SOEL, LAURA MARGESIN, LINDSAY VAN DER HOEVEN, ALEXIS BELBEL, and JESS HULL,<br><br>              Defendants. | Case No. 25 cv 10487<br><br>Honorable Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Angelica Damico alleges that after viewing Instagram posts from several social media influencers, she was persuaded to purchase a Luli Fama swimsuit. The influencers, however, failed to disclose their financial relationship with Luli Fama or indicate that their posts constituted paid endorsements. Upon learning this, Damico filed this class action lawsuit in state court against the Luli Fama Defendants, Orlando Bathing Suit LLC d/b/a Everything But Water, and six influencers, including Alexis Belbel, alleging violations of various state consumer fraud and deceptive practices act violations, along with common law theories of unjust enrichment and negligent misrepresentation.

Defendants move to dismiss the complaint for lack of subject-matter jurisdiction under Rule 12(b)(1), lack of personal jurisdiction under Rule 12(b)(2), and for failure to state a claim under Rule 12(b)(6). [27], [52], [53]. Damico moves for leave to file an amended complaint,

naming an additional plaintiff. [65]. For the reasons stated below, Defendants Everything But Water's and Alexis Belbel's motions to dismiss [27], [52] are granted in part and denied in part, and this case is remanded to state court. Plaintiff has failed to establish an Article III injury to allow this case to proceed in federal court.[1]

## Background

Defendants LuliFama.com LLC, My LuliBabe, LLC, and Earth, Sea & Wear, LLC (jointly the Luli Fama Defendants) design, manufacture, and sell swimsuits both in-store and online. [1-1] ¶¶ 23, 24. Although the Luli Fama Defendants operate three brick-and-mortar stores in Florida, their primary business is conducted through their online store and social media sales. *Id.* ¶ 24. Damico alleges that the Luli Fama Defendants' marketing strategy includes soliciting social media influencers to advertise their products and that they were aware that the influencers were not using the "paid partnership" tag. *Id.* ¶¶ 25, 26. Damico also claims that Cindy Prado, Michele Soel, Laura Margesin, Lindsey Van Der Hoeven, Alexis Belbel, and Jess Hull (collectively the Influencers) are among the social media influencers participating in this scheme. *Id.* ¶¶ 1, 4. Damico alleges that she saw Luli Fama products worn by the Influencers, which led her to purchase a Luli Fama product. *Id.* ¶¶ 35, 43. Damico purchased a Luli Fama swimsuit at an Everything But Water store in Naperville, Illinois, on June 24, 2025, where the swimsuits were also sold. *Id.* ¶ 73.

According to Damico, her decision to purchase a Luli Fama swimsuit and pay a premium for it was "influenced" by the Influencers she followed, who promoted Luli Fama products without disclosing that they were paid endorsements.[2] *Id.* ¶¶ 35, 36. Damico alleges she could not

---

[1] As a result, the Luli Fama Defendants' motion to dismiss [53] and Damico's motion for leave to file an amended complaint [65] are denied as moot.

[2] Damico does not identify the specific posts she saw from the Influencers that persuaded her to purchase the Luli Fama swimsuit. [1-1] ¶ 35.

determine that the posts were paid endorsements rather than honest recommendations. *Id.* ¶¶ 44, 46. Damico further alleges that the Luli Fama swimsuit she purchased was of an inferior quality compared to the price she paid. *Id.* ¶ 38. According to Damico, she would not have purchased the products but for the misleading advertisements. *Id.* ¶¶ 36, 45. Damico claims that she could have purchased a comparable product from another brand, such as Victoria's Secret, for an average of 50% less than she paid for the Luli Fama swimsuit. *Id.* ¶ 38.

### Legal Standard

"[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "Standing to sue is an important component of that limitation." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Even if no party raises the issue, federal courts have an "independent duty to ensure" that a case is properly in federal court. *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1160 (7th Cir. 2021) (quoting *Dexia Crédit Loc. v. Rogan*, 602 F.3d 879, 883 (7th Cir. 2010); *see also Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 461 (7th Cir. 2020).

Defendants Everything But Water and Belbel move to dismiss the Complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Rule 12(b)(1) tests the sufficiency of the complaint on subject matter jurisdiction, not the merits of the case. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). To have standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338.

As the party invoking federal jurisdiction, the Luli Fama Defendants "had to establish that all elements of jurisdiction—including Article III standing—existed at the time of removal." *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) (citing *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992)). If, after removal, "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. 1447(c); *see also Collier*, 889 F.3d at 896 (explaining that remand is required when jurisdiction is lacking).

**Discussion**

Two of the Defendants, Belbel and Everything But Water, moved to dismiss the complaint under Rule 12(b)(1) for lack of Article III standing because Damico failed to allege an injury-in-fact. Defendants argue that Damico received the benefit of her bargain because she purchased a Luli Fama swimsuit at an Everything But Water store, which is not alleged to be a knock-off or otherwise defective, and that her buyer's remorse after the fact does not constitute an injury in fact.

An "injury in fact" is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339. "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (cleaned up). "Requiring a plaintiff to demonstrate a concrete and particularized injury caused by the defendant and redressable by the court ensures that federal courts decide only 'the rights of individuals[.]'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Marbury v. Madison*, 5 U.S. 137, 170 (1803)). "Economic harm can be a concrete injury sufficient to confer standing" including "when, 'as a result of a deceptive act or an unfair practice,' a plaintiff is 'deprived of the benefit of his bargain.'" *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 529 (7th Cir. 2024) (quoting *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019)).

4

Damico's claim of injury is that she did not receive the benefit she bargained for because she considers the quality of the swimsuit to be worth less than she paid. Two Seventh Circuit decisions help illustrate the distinction between a cognizable injury for Article III standing from one that is conjectural or speculative.

In *Recalled Abbott*, the plaintiff alleged that some of the infant formula produced at the plant in Sturgis, Michigan, was contaminated with harmful bacteria. 97 F.4th at 527. The plaintiffs alleged that they were injured because they would not have paid the purchase price for the products had they known of a substantial risk that the formula contained harmful bacteria. *Id.* at 529. The plaintiffs failed to allege that they purchased any contaminated products or that the contamination was so widespread as to affect any given unit of Abbott's formula. *Id.* The Seventh Circuit held that there is no economic injury when the plaintiffs received the benefit of their bargain and suffered no economic loss—they purchased and received untainted infant formula. *Id.* at 532.

The Seventh Circuit differentiated the facts in *Recalled Abbott* from another of its Article III standing cases, *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011). In *Aqua Dots*, a toy manufacturer substituted a nontoxic adhesive with an adhesive that, if ingested, could induce serious illness and had already done so for some children. *Id.* at 749–50. Every unit of the toy contained the toxic adhesive, and it was undisputed that the toys were defective. *Id.* The Seventh Circuit held that a universal defect in a toy that rendered the toy valueless was an economic harm that conferred standing because the plaintiffs "paid more for the toys than they would have, had they known of the risks the beads posed to children." *Id.* at 751.

In this case, Damico does not allege that the swimsuit she purchased was defective or that there was a widespread defect in Luli Fama swimsuits. Damico also does not allege a defect in the product that renders the product valueless. Instead, Damico asserts that she could purchase a

5

comparable product for less from another brand. [1-1] ¶¶ 6, 38. But simply because another brand sells similar swimsuits for less does not make it a cognizable economic injury to Damico. Every day, shoppers face an array of products in stores across the country—from generic brands to the most expensive labels—and must decide for themselves whether they are getting value for their money. That is called choice. And if a buyer is not happy with their choice, they are not injured for Article III purposes because they received the benefit of their bargain.[3]

This case is also about disappointment, which is similarly insufficient for Article III standing. In *Eike v. Allergan, Inc.*, the plaintiffs argued "that the price of the eye drops is excessive because a smaller drop, costing less to produce and (especially) to package, could be sold at a lower price yet still cover the producers' costs[.]" 850 F.3d 315, 316 (7th Cir. 2017). The Seventh Circuit found that even if it could be demonstrably proven that smaller eye droppers would be more effective and cheaper, the plaintiff lacked standing to sue. As the Seventh Circuit stated, "you cannot sue a company and argue only—it could do better by us." *Id.* at 318 (cleaned up). "The fact that a seller does not sell the product that you want, or at the price you'd like to pay, is not an actionable injury; it is just a regret or disappointment[.]" *Id.*

Two influencer cases from this district also merit discussion. Damico relies heavily on *Sava v. 21St Century Spirits, LLC*, where the court found the plaintiff had standing to sue because they alleged that there was a "material difference between a product as advertised[,]" which "constitutes a measurable economic injury for purposes of Article III." 2024 WL 3161625, at *4 (N.D. Ill. June 25, 2024). However, in *Sava*, the plaintiffs alleged that the "influencers" advertisements included claims that Blue Ice Vodka "tastes better than other vodkas," has between 52 and 57 calories per

---

[3] While Damico argues that the $5 million alleged in her complaint are the actual damages incurred by her proposed class, a "mere reference to 'actual damages' in the complaint's prayer for relief does not establish Article III standing." *Collier*, 889 F.3d at 896.

ounce, and is "fit-friendly" and has "health benefits," including that it helps with personal fitness and weight management. *Id.* at *1. However, the Complaint alleged that the products that plaintiffs purchased were not handcrafted, did not taste better than other vodkas, and contained at least 64 calories per ounce. *Id.* at *2. The court found a material difference between the advertised product and the inferior product received, which constituted a measurable economic injury. *Id.* at *4–5. Damico makes no such allegations that the swimsuit she purchased differs from what was advertised.

Instead, the allegations in this case are more like those found to be insufficient to establish Article III standing in *Simoni v. Hi-Tech Pharms., Inc.*, 2025 WL 2614685 (N.D. Ill. Sept. 10, 2025). In *Simoni*, the plaintiff alleged that Hi-Tech was using influencers to promote its products without disclosing that the influencers were paid. *Id.* at *1. The Court found that the plaintiff failed to allege that she received a product worth less than she bargained for or that the product was defective in a way to render it valueless. *Id.* at *3. As such, the plaintiff simply alleged buyer's remorse, which is not a cognizable injury under Article III. *Id.* Likewise, here, Damico merely alleges that she could have purchased a similar product for less from another brand; this is buyer's remorse and not an actionable Article III injury.

On a different note, Damico also fails to allege that her injury is fairly traceable to the Defendants' conduct. "The traceability element of Article III standing 'examines the causal connection between the assertedly unlawful conduct and the alleged injury.'" *Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1025 (7th Cir. 2024) (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)). While a plaintiff need not establish that the defendant's conduct was the proximate cause of plaintiff's injuries, "an injury is not fairly traceable to a defendant's conduct if the causal chain is attenuated." *Pit Row, Inc. v. Costco Wholesale Corp.*, 101 F.4th 493, 502 (7th

Cir. 2024) (quoting *Allen*, 468 U.S. at 757) (cleaned up). Instead, "a plaintiff must show 'a substantial likelihood' of causation." *Id.* (quoting *Duke Power Co. v. Envt'l Study Grp., Inc.*, 438 U.S. 59, 75 n.20 (1978)).

Even if the Court were to accept Damico's theory that she was injured by purchasing a low-quality swimsuit, she does not sufficiently allege that her injury is fairly traceable to the Influencers' failure to disclose that they were paid for their social media posts. For example, Damico fails to allege anything about the Instagram posts that made her want to purchase the swimsuit. There is nothing in the Complaint about the Influencers' comments about the quality of the swimsuits. Nor is there anything alleged that connects the failure to disclose the Influencers' payments to her decision to purchase the swimsuit. Thus, there is nothing in the Complaint that establishes that her injury is fairly traceable to the failure to disclose the Influencers' payments.

Upon finding that Damico lacks Article III standing, Section 1447(c) requires the Court to remand the case back to state court. *See Collier*, 889 F.3d at 897 ("Thus, § 1447(c) required the district court to remand this case to state court, because it does not satisfy Article III's requirements."); 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). Therefore, this case is remanded to state court.

**Conclusion**

For the above reasons, Defendants Everything But Water's and Alexis Belbel's motions to dismiss [27], [52] are granted in part and denied in part, and this case is remanded to state court. The Luli Fama Defendants' motion to dismiss [53] and Damico's motion for leave to file an amended complaint [65] are denied as moot.

**SO ORDERED.**

Dated:  March 27, 2026

Sunil R. Harjani
United States District Judge

9